IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| USIEL SANCHEZ ROMERO, | ) | Case No. 1:26-cv-00007-SMR-SBJ |
| | ) | |
| Petitioner, | ) | |
| | ) | ORDER ON PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| ANDREW BROWN, in his official capacity | ) | |
| as Pottawattamie County Sheriff, PETER | ) | |
| BERG, in his official capacity as Director of | ) | |
| United States Immigration and Customs | ) | |
| Enforcement St. Paul Field Office, TODD | ) | |
| M. LYONS, in his official capacity as Acting | ) | |
| Director of United States Immigration and | ) | |
| Customs Enforcement, MARKWAYNE | ) | |
| MULLIN, in his official capacity as | ) | |
| Secretary of United States Department of | ) | |
| Homeland Security, PAM BONDI, in her | ) | |
| official capacity as United States Attorney | ) | |
| General, and DONALD J. TRUMP, in his | ) | |
| official capacity and President of the United | ) | |
| States, | ) | |
| | ) | |
| Respondents. | ) | |

Petitioner Usiel Sanchez Romero seeks a writ of habeas corpus under 28 U.S.C. § 2241, challenging his detention by Immigration and Customs Enforcement ("ICE"). [ECF No. 1]. He argues that his detention without a bond hearing violates the Fifth Amendment, that his arrest violated the Fourth Amendment, and that ICE's actions run afoul of the Administrative Procedure Act ("APA"). *Id.* ¶¶ 3, 54–60, 68. Romero seeks immediate release or, alternatively, a bond redetermination hearing. *Id.* ¶ 6. For the reasons stated below, the petition is DENIED.

I.      BACKGROUND

Romero is a native of Mexico. *Id.* ¶ 19. He unlawfully entered the United States in May 2013 and was encountered by U.S. Border Patrol. [ECF No. 7-1 ¶ 12]. He voluntarily returned to

Mexico, but subsequently re-entered without lawful admission or inspection shortly thereafter. [ECF Nos. 1 ¶ 19, 7-1 ¶ 12]. He has no criminal history and has since married, fathered a child, and started a contracting business. [ECF No. 1 ¶¶ 19, 20].

On March 21, 2026, Romero was detained by ICE following a traffic stop. *Id.* ¶ 21. This was his first interaction with immigration officials since he re-entered the country. He contends that the stop was random and unsupported by reasonable suspicion or probable cause. *Id.* Federal Respondents tell a different story. According to ICE, officers cross-referenced two databases— one listing individuals with prior immigration encounters, another listing vehicle registration records—and identified Romero as the registered owner of a vehicle, an individual with a prior immigration encounter, and lacking record of lawful entry. *See* [ECF No. 7-1 ¶ 13]. ICE contends that it had reasonable suspicion to stop the driver of the vehicle registered to Romero on that basis. *Id.*; *see also* [ECF No. 7 at 5–6].

When ICE stopped Romero, he initially locked the vehicle doors and refused to roll down the window. [ECF No. 7-1 ¶ 13]. Officers used the ICE database to confirm that Border Patrol had previously encountered Romero and that there was no record of lawful entry. *Id.* He was then detained, charged as an alien present without admission or parole, and placed in removal proceedings. *Id.*; *see also* [ECF No. 7-2].

Romero has since been detained without bond pursuant to 8 U.S.C. § 1225(b)(2)(A). [ECF No. 1 ¶ 5]. His next scheduled appearance before an immigration judge is May 6, 2026. [ECF No. 7-1 ¶ 16]. He has requested an immigration bond redetermination hearing, but no ruling has been issued. [ECF No. 1 ¶ 22]. Because Romero is subject to mandatory detention under Section 1225(b), the immigration judge likely lacks authority to grant him a bond hearing. *See In re Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

Romero filed this petition for writ of habeas corpus on March 30, 2026, alleging violations of the Fourth Amendment, Fifth Amendment, and the APA. [ECF No. 1 ¶¶ 54–69]. He claims his arrest constituted an unreasonable seizure, and that the denial of a bond redetermination hearing violates his due process rights and the APA. *Id.* ¶¶ 54–69. He requests the Court to order his immediate release or, alternatively, a bond redetermination hearing. *Id.* at 18.

## II.    DISCUSSION

Federal courts have statutory authority to hear habeas corpus petitions from persons claiming to be held in custody in violation of the Constitution, federal laws, or treaties of the United States. *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (citation omitted). That authority extends "to those in immigration detention." *Roble v. Bondi*, 803 F. Supp. 3d. 766, 770 (D. Minn. 2025) (citing *INS v. St. Cyr*, 533 U.S. 289, 305–06 (2001)). As a habeas petitioner, Romero "bears the ultimate burden of showing that his detention violates the law." *Yee S. v. Bondi*, 806 F. Supp. 3d 894, 900 (D. Minn. 2025) (citing *Copenhaver v. Bennett*, 355 F.2d 417, 422 (8th Cir. 1966)).

The Fifth Amendment affords due process protections to aliens within the United States regardless of whether their presence is "lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These protections apply in removal proceedings. *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Similarly, the Fourth Amendment applies to Romero's arrest and detention. *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010); *cf. United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975). The Court addresses Romero's arguments with these standards in mind.

### A. Fourth Amendment – Unreasonable Search and Seizure[1]

Romero argues that his Fourth Amendment rights were violated because the traffic stop and his arrest were not supported by reasonable suspicion or probable cause. [ECF No. 1 ¶¶ 54–60]. In support of this argument, he cites immigration cases from Minnesota detailing constitutional violations and detention practices that rested on "dubious allegations" during Operation Metro Surge. *Id.* ¶¶ 58–59 (citing *Juan C.R.R. v. Bondi*, No. 26-01282, 2026 WL 752462 (D. Minn. Mar. 17, 2026); *Hussen v. Noem*, --- F. Supp. 3d ---, 2026 WL 657936 (D. Minn. Mar. 9, 2026)).

Romero fails to demonstrate a Fourth Amendment violation here. The Court acknowledges the concerning allegations regarding Operation Metro Surge, but Romero's detention is unrelated to that operation. The alleged misconduct in those cases cannot be imputed to this one.

Simply, the facts in this case do not bear out Romero's allegations. He alleges he was "randomly stopped" by ICE, but that is refuted by an ICE deportation officer's declaration. *Id.* ¶ 60; [ECF No. 7-1 ¶ 13]. That officer detailed his familiarity with Romero's case and succinctly explained that Romero was identified as the registered owner of a vehicle, an individual previously encountered by immigration officials, with no record of lawful entry. [ECF No. 7-1 ¶¶ 9, 13]. That was sufficient to establish reasonable suspicion to stop a vehicle registered to Romero. *See United States v. Spencer*, 646 F. App'x 6, 8 (2d Cir. 2016) (immigration databases and corroboration of anonymous tip established reasonable suspicion).

However, that is not the end of the analysis. At the show cause hearing, Romero alleged for the first time that the vehicle he was driving was not registered to him—it was registered to his

---

[1] Romero's petition does not specifically request any relief related to the alleged Fourth Amendment violation. Nonetheless, the Court addresses the claim because a constitutional violation could be grounds for habeas relief. *See Rasul*, 542 U.S. at 473–75.

wife.  In a troubling concession, Federal Respondents could not produce footage or any other evidence shedding light on what occurred immediately before, during, or after the stop.  However, Federal Respondents provided additional explanation regarding ICE's identification of Romero and argued that even if his claim were true, it would not establish a Fourth Amendment violation.

In short, Romero and his wife are the registered owners of remarkably similar vehicles; Romero owns a white 2003 Ford Econoline van, his wife owns a white 2002 Ford Econoline van. Ex. C.  Both vehicles have Nebraska license plates and are registered to the same address.  *Id.*  But the license plate numbers differ by a single digit—the sixth digit on Romero's vehicle is a "2," while the sixth digit on his wife's vehicle is a "3."  *Id.*  This is a relevant, but minor, difference. Federal Respondents explained that the proprietary program ICE uses to identify aliens links vehicles based on marriage and shared address.  *Id.*  Accordingly, the program would have identified Romero as the owner of his wife's vehicle thus explaining why ICE believed Romero was driving a vehicle registered in his name.

The Court has serious concerns regarding the lack of information and oversight provided by ICE—a recurring theme in immigration cases.  But Romero has not met his burden of demonstrating a Fourth Amendment violation.  Reasonable suspicion is a low bar, one that was satisfied here.  *Cf. Kansas v. Glover*, 589 U.S. 376, 381 (2020) (vehicle's registration information and "commonsense inference" that the vehicle's owner was likely the driver was "*more than reasonable suspicion*" to conduct a traffic stop) (emphasis added); *id.* at 386 (stop was justified under the totality of the circumstances because officer "possessed no exculpatory information" to rebut inference that defendant "was driving his own truck").

Once ICE confirmed Romero's identity, his arrest was supported by probable cause.  [ECF No. 7-2 at 4].  His contention that Federal Respondents offer only a *post hoc* justification is

unsupported by any evidence. [ECF No. 9 ¶ 7]. The Court cannot accept Romero's conclusory allegations as true.

Nonetheless, even if Romero's Fourth Amendment rights were violated, his requested relief would not be the appropriate remedy. His arguments relate solely to the initial traffic stop, not his ongoing detention. A Fourth Amendment violation at the moment of arrest provides scant justification for a subsequent release from custody or a bond hearing. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention."). The cases cited by Romero do not compel a different outcome; none resulted in release of a similarly situated petitioner based solely on a Fourth Amendment violation during the initial arrest. *See, e.g.*, *Francisco S. v. Bondi*, File No. 26-cv-1455 (ECT/DTS), 2026 WL 485291, at *4 (D. Minn. Feb. 20, 2026) (misclassification under Section 1225(b)(2)); *Qasemi v. Francis*, 25-cv-10029 (LJL), 2025 WL 3654098, at *14 (S.D.N.Y. Dec. 17, 2025) (procedural due process and improper detention under 8 U.S.C. § 1225(b)).

Additional case law cuts against Romero. "[A]n illegal arrest has no bearing on a subsequent deportation proceeding." *INS v. Lopez Mendoza*, 468 U.S. 1032, 1040 (1984). Further, "[t]he exclusionary rule generally does not apply in civil deportation proceedings when there is a Fourth Amendment violation standing alone." *Lopez-Fernandez v. Holder*, 735 F.3d 1043, 1046 (8th Cir. 2013); *see also Lopez-Mendoza*, 468 U.S. at 1038–39 (holding that a respondent's "body" in a civil proceeding "is never itself suppressible" even where an unlawful arrest occurred). Release from custody or a bond hearing is not the appropriate remedy here.

### B. Fifth Amendment – Due Process

Romero raises both substantive and procedural due process claims, with some overlap between them. He contends that Section 1225(b)(2) prevents him from receiving a bond

redetermination hearing, which violates his procedural due process right to be heard at a meaningful time and in a meaningful manner. [ECF No. 1 ¶¶ 35, 36]. He also argues that the denial of a bond redetermination hearing violates his substantive due process rights because his continued detention is not supported by any special interest or compelling justification outweighing his liberty interest. *Id.* ¶ 64.

Until recently, immigration detention was frequently challenged on statutory grounds. *See, e.g.*, *Dambreville v. Noem*, Case No. 4:25-cv-00514-SMR-SBJ, 2026 WL 602174 (S.D. Iowa Jan. 12, 2026). The Eighth Circuit foreclosed the statutory argument in *Avila v. Bondi*, --- F.4th ---, 2026 WL 819258 (8th Cir. Mar. 25, 2026). In *Avila*, a split panel of the Eighth Circuit held that individuals such as Romero are not automatically eligible for a bond hearing under Section 1226(a) merely by virtue of their presence in the country. *Id.* at *6. The *Avila* dissent highlighted that the majority opinion left the due process question now raised by Romero unresolved, and noted that district courts in the Fifth Circuit had granted habeas relief on that basis following a similar ruling in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). *Avila*, --- F.4th at ----, 2026 WL 602174, at *8 n.8 (Erickson, J., dissenting).

### 1. Procedural Due Process

Romero asserts that his claim should be resolved using the procedural due process framework of *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Mathews* requires balancing the private interest affected by the government action, the risk of erroneous deprivation of that interest, and the government's interest in maintaining the current procedures. *Id.* at 335. In his view, immediate release is warranted because his interest in freedom from detention is critically important and the lack of a bond hearing presents a high risk of erroneous deprivation—interests that far outweigh the Government's interest in continued detention. [ECF No. 1 ¶¶ 35–53, 65–67].

Federal Respondents contend that the Eighth Circuit foreclosed the application of *Mathews* in this circumstance.  [ECF No. 7 at 5].  They rely heavily on two cases to support this assertion and demonstrate the constitutionality of Romero's mandatory detention: (1) *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024) and (2) *Demore v. Kim*, 538 U.S. 510 (2003).

Both cases involved mandatory detention pending a determination of removability, though under a different statutory provision, 8 U.S.C. § 1226(c).  *See Banyee*, 115 F.4th at 930; *Demore*, 538 U.S. at 513–14.  Section 1226(c) requires the Attorney General to take into custody any alien who commits certain criminal offenses.  Detention is mandatory, detainees are not eligible for bond.  Although Sections 1225(b) and 1226(c) require detention under different circumstances, the core issue—mandatory detention during removal proceedings—is the same.  *Cf. Avila*, --- F.4th at ----, 2026 WL 819258, at *5 (discussing the overlap between the two provisions).

In *Demore*, the Supreme Court held that the mandatory detention under Section 1226(c), without an individualized determination of danger or flight risk, did not violate due process.  538 U.S. at 524–30 (collecting cases).  In *Banyee*, the Eighth Circuit addressed a related question: the interaction between the Due Process Clause and the length of detention pending a determination of removability.  115 F.4th at 930.  In addressing that question, the Eighth Circuit repudiated *Mathews* and concluded that there was "no room for a multi-factor 'reasonableness' test" or interest balancing because prior Supreme Court cases, *Zadvydas* and *Demore*, had "already done whatever balancing is necessary."  *Id*. at 933.

The Eighth Circuit then applied *Demore*'s bright-line rule: "the government can detain an alien for as long as deportation proceedings are still 'pending.'"  *Id.* (quoting *Demore*, 538 U.S. at 527).  Although there are exceptions to this rule, detention does not violate due process when

"deportation is still on the table" because "what matters is that detention pending deportation 'ha[s] a definite termination point.'" *Id.* at 932–33 (quoting *Demore*, 538 U.S. at 528–29).

Romero attempts to distinguish *Banyee* and *Demore* because they are based upon Section 1226(c). [ECF No. 9 ¶ 11]. This overlooks the material similarities of those cases while emphasizing an immaterial distinction. Regardless of the statutory provision at issue, *Demore* and *Banyee* stand for the same proposition: mandatory detention pending a determination of removability comports with due process. *Banyee*, 115 F.4th at 933 (quoting *Demore*, 538 U.S. at 527). Neither opinion suggests the rule is confined to Section 1226(c).

The Court does not minimize the equities on Romero's side. He has lived in the United States for 13 years, started a family, owns a business, has no criminal history, and more than 20 people submitted letters attesting to his character. *See* [ECF No. 14-3] (sealed).[2] But the wisdom of a policy poses a different question than its constitutionality. On that question, the Court is bound by precedent. The Court therefore concludes that the Eighth Circuit has foreclosed application of the *Mathews* procedural due process analysis here and, so long as none of the *Banyee* exceptions arise, "the government can detain [Romero] for as long as deportation proceedings are still 'pending.'" 115 F.4th at 933 (quoting *Demore*, 538 U.S. at 527). The Fifth Circuit cases cited by Romero are distinguishable because they relied on *Mathews* to find a due process violation. *See, e.g.*, *Brizuela v. Noem*, Case No. 5:26-CV-0279-JKP, 2026 WL 752257, at *5–7 (W.D. Tex. Mar. 12, 2026).

---

[2] The Court, once again, notes an error by the ICE officer processing Romero. *See* [ECF No. 14-1]. In the I-213, this officer listed Romero as unmarried and having no children. *Id.* It is undisputed that both assertions are false. Details matter; especially when an individual's liberty and potential deportation are at stake. Such negligence is becoming routine in immigration cases, and the inability to accurately document basic biographical information falls well short of Court expectations. *See, e.g.*, *Phongsavanh v. Williams*, 809 F. Supp. 3d 864, 871 n. 2 (S.D. Iowa 2025).

The broader principle is well established. The government "has more flexibility when dealing with immigration" and Congress has the authority to "make rules as to aliens that would be unacceptable if applied to citizens." *Banyee*, 115 F.4th at 931 (second quoting *Demore*, 538 U.S. at 522). Accordingly, the "longstanding view" is "that the [g]overnment may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* (quoting *Demore*, 538 U.S. at 526). Congress did precisely that here. *See Avila*, --- F.4th at ----, 2026 WL 819258, at *6.

This rule is not novel; it is well-supported by Supreme Court precedent. Nearly 75 years ago, the Supreme Court upheld detention without bond for deportable aliens absent any individualized finding of danger or flight risk. *Banyee*, 115 F.4th at 931–32 (citing *Carlson v. Landon*, 342 U.S. 524, 541–42 (1952)). Other Supreme Court cases confirm the same principle. *See, e.g.*, *Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("We think it clear that detention or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens, would be valid."). Romero does not address these cases, nor does he argue that any of the special circumstances identified in *Banyee* render his detention unconstitutional. *See* 115 F.4th at 932–34.

The Court thus concludes that Section 1225(b)(2) does not violate Romero's procedural due process rights. The rationale of *Demore* and *Banyee* applies equally to due process challenges under Sections 1225(b)(2) and 1226(c). This conclusion is bolstered by the fact that "prior to 1907 there was no provision permitting bail for *any* aliens during the pendency of their deportation proceedings." *Demore*, 538 U.S. at 523 n.7.

The Court is not alone in reaching that conclusion. A judge in the District of Nebraska recently resolved a nearly identical question on similar facts. *Leiva v. Berg*, 4:26CV3023, 2026

WL 948430 (D. Neb. Apr. 8, 2026).  Other courts have similarly rejected due process challenges to detention under Section 1225(b)(2) in the wake of *Avila*.  *See, e.g.*, *Boubacar v. Blanche*, 8:26CV59, 2026 WL 972708, at *3 (D. Neb. Apr. 10, 2026) ("While *Avila* does not foreclose [petitioner's] procedural due process claim, other Supreme Court and Eighth Circuit precedent does."); *Sanchez v. Bondi*, Case No. 1:26-cv-00063, 2026 WL 883680, at *2 (D.N.D. Mar. 31, 2026) ("Petitioner is not being detained absent due process because being detained pursuant to a constitutionally legitimate statute promulgated by Congress is not a due process violation."); *Vargas v. Miami Fed. Det. Ctr.*, --- F. Supp. 3d ---, 2026 WL 911291, at *8 (S.D. Fla. Apr. 2, 2026) (detention under Section 1225(b)(2) "comports with due process"); *Abdullaev v. Bullock*, Case No. 2:26-cv-02250-BCL-atc, 2026 WL 915693, at *3–5 (W.D. Tenn. Apr. 3, 2026) (Constitution does not guarantee "an individualized bond hearing in connection with removal proceedings"); *Romero v. Swearingen*, No. 2:26-cv-00131-JRO-MG, 2026 WL 945947, at *13 (S.D. Ind. Apr. 8, 2026) ("Respondents may enforce the policy Congress already adopted when it enacted the mandatory detention provision in Section 1225(b)(2)(A) without an individualized bond hearing.").

2.   Substantive Due Process

Romero also presses a substantive due process challenge premised on the absence of a bond redetermination hearing.  [ECF No. 1 ¶ 64].  He argues that his continued detention is not supported by any special interest or compelling justification outweighing his liberty interest.  *Id.* ¶¶ 63–64.

Substantive and procedural due process are not exclusive concepts; "their protections often overlap."  *Albright v. Oliver*, 510 U.S. 266, 301 (1994) (Stevens, J., dissenting).  The distinction that matters is that the substantive component protects individual liberty against "certain government actions regardless of the fairness of the procedures used to implement them."  *Collins*

*v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citation omitted). But that protection extends only to "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition," subject to "careful description." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (citation omitted). Many of the cases already discussed draw no explicit distinction between substantive and procedural due process. *See, e.g.*, *Banyee*, 115 F.4th at 928. Accordingly, Romero's substantive due process claim fails for many of the same reasons. In short, removal proceedings are pending and "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 931 (cleaned up) (quoting *Demore*, 538 U.S. at 526).

To the extent that Romero's substantive due process claim differs from his procedural due process claim, it fails for independent reasons. Substantive due process protects against government action that infringes a fundamental right, as well as certain nonpunitive detention where "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Zadvydas*, 533 U.S. at 690 (citation omitted). Either way, the analysis begins with "a careful description of the asserted right." *Flores*, 507 U.S. at 302.

Romero does not attempt that description. He ties his substantive due process argument to the availability of a bond redetermination hearing under Section 1226(a). [ECF No. 1 ¶ 64]. At bottom, that is a claim to a right of release into the country, without lawful admission, while removal proceedings are pending. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. at 690. Romero, however, identifies no such fundamental right. *See Castillo v. Rhoney*, 25-CV-1065 (JLS), 2026 WL 775995, at *8 (W.D.N.Y. Mar. 19, 2026) (concluding that Supreme Court precedent establishes that "a removable alien does

not have a liberty interest in being released into the United States while removal proceedings are pending"). The right he actually asserts—release into the country without lawful admission pending removal—is not "deeply rooted in this Nation's history and tradition." *Leiva*, 2026 WL 948430, at *5 (citation omitted). His claim fails at the threshold.

It fails on the merits as well. The bond redetermination hearing that Romero seeks would permit an immigration judge to release him upon finding that he is not a flight risk or a danger to the community. *Id.* ¶¶ 6, 23. His substantive due process claim—and his requested relief—thus rest entirely on the premise that the Constitution requires an individualized determination of dangerousness and flight risk before he may be detained while removal proceedings are pending. The Due Process Clause does not require such a determination.

*Demore* established as much. There, the Supreme Court reaffirmed *Carlson*, a case in which the Supreme Court rejected the argument that aliens must be released from custody because "there had been no finding that they were unlikely to appear for their deportation proceedings," and no individualized finding of dangerousness. *Demore*, 538 U.S. at 524. Detention under those conditions did not violate due process even though the detention authority was statutorily committed to the Attorney General's discretion. *Carlson*, 342 U.S. at 544. The Eighth Circuit has interpreted *Demore* and *Carlson* to stand for the same principle. *See Banyee*, 115 F.4th at 932 ("Just as in *Demore*, no individualized findings of dangerousness or flight risk were necessary.").

The upshot is straightforward. Romero's substantive due process claim rests on the absence of an individualized determination regarding risk of flight and dangerousness—but the Supreme Court has long held that no such determination is required. *See Bushuev v. Immigr. & Customs Enf't*, Case No. 1:25-cv-213 MAL, 2026 WL 352873, at *3 (E.D. Mo. Feb. 9, 2026). "Detention during removal proceedings is a constitutionally permissible part of that process."

*Demore*, 538 U.S. at 531.  The Court thus declines Romero's "invitation to swim against the tide of contrary Supreme Court precedent" and conclude that his substantive due process rights have been violated.  *Leiva*, 2026 WL 948430, at *5.

### C.  Administrative Procedure Act

Romero's final claim is that "the immigration judge's decision" violates the APA.  *See* 5 U.S.C. 706(A)–(D).  At the show cause hearing, Romero clarified that the administrative action at issue is the anticipated denial of a bond redetermination hearing.  But an anticipated denial of a bond hearing is not a "final agency action," subject to judicial review.  *Id.* § 704.  Romero offers no contrary argument, and no final agency action would likely occur until the Board of Immigration Appeals affirmed the hypothetical denial.  *See Garcia-Pascual v. Bondi*, 143 F.4th 910, 913 (8th Cir. 2025).  Because this claim is not ripe, the Court need not address it further.

### III.    CONCLUSION

Reasonable minds could question the wisdom of depriving individuals such as Romero of a bond hearing.  But it is the Court's role "to apply the law, not rewrite it."  *Dep't of Ag. v. Kirtz*, 601 U.S. 42, 63 (2024).  The law affords significant deference on immigration matters to the other branches of government.  "[O]ver no conceivable subject is the legislative power of Congress more complete."  *Flores*, 507 U.S. at 305.  Binding precedent establishes that Romero's constitutional rights have not been violated.  *See, e.g.*, *Demore*, 538 U.S. at 530; *Banyee*, 115 F.4th at 932–33.  For the foregoing reasons, Romero's petition for writ of habeas corpus is DENIED.  [ECF No. 1].

IT IS SO ORDERED.

Dated this 15th day of April, 2026.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT